The Abstract has now closed its fifth year of existence, and it goes without saying that it has become very helpful to the Ohio Bench and Bar. In it over 4,000 current decisions of the Ohio Judiciaries have been reported, most of which have not received publicity elsewhere, and never will. Its five volumes have thus become an extensive storehouse of local case law that can be acquired only from them. It has become so useful that to have it, has become essential to a thriving law practice. It is also true that practitioners who do not have access to it, and read it, are often put to a strong disadvantage in combatting at the trial table, their adversaries, who have its extensive vocabulary of precedents to draw from. And it is becoming important to those who have not the five volumes already published to commence at once to take it, for as fast as the number of back volumes increases, the difficulty of getting even a part of a set becomes greater. The building up of a partial set will thus be done insiduously, and the back volumes can be added as desired.

# SYLLABI

STATE ex STANTON, Pros. Atty. v.
ZANGERLE, Co. Aud.
STANTON, Pros. Atty. v. TAX COM.
Ohio Supreme Court.

No. 10755, 20599. Decided Dec. 21, 1927.
In mandamus.
Writ denied.
Error to Cuyahoga Appeals.
Judgment affirmed.

1157. TAXATION—1. Domicile, for listing personal property of an Ohio corporation located therein, is that named in its charter.
2. Not required to list in other tax district wherein it does business, unless legislature has otherwise plainly provided.

KINKADE, J.

The domicile of an Ohio corporotion, named in its charter, when located in Ohio, is the proper place for the listing of the corporation's personal property for taxation, and the corporation is not required to list such property in any other tax district in Ohio by reason of the fact that it does a large portion of its business in such other district, except in cases where the Legislature, by statute, has plainly provided otherwise with respect to the listing and taxing of certain classes of corporate property. (Pelton v. Transp. Co., 37 Ohio St., 450 app. and fol.)
(Marshall, CJ., Day, Robinson, Jones and Matthias, JJ., concur.)

TAX. COM. v. SEC. SAV. BK. & TR. CO.
of Toledo.
Ohio Supreme Court.
No. 20356. Decided Dec. 21, 1927.
Error to Lucas Appeals.
Judgment reversed.

635. INHERITANCE TAX—1. The exemption from this tax of property passing to an institution for public charity, does not apply to the succession of property to be used for not less than 50 nor more than 60 years for profit, even if, thereafter, its accumulation is to be dispensed as a public charity.

2. The succession, to a trustee for dispensing charity only to Master Masons, etc., is not one, "for purposes only of public charity."

ROBINSON, J.

1. The provision of Section 5334, General Code, "The succession to any property passing * * * to or for the use of an institution for purposes only of public charity * * * shall not be subject to the preceding sections of this sub-division," does not apply to the succession of property to be used for a period of not less than fifty nor more than sixty years exclusively for profit and the multiplication of profits, even though such property and its accumulation is thereafter to be dispensed as a public charity, the purpose of the testator being not alone to dispense a public charity but also to increase and augment the estate he has left.
2. The succession of property to a trustee to be used for the purpose of dispensing charity only to aged Master Masons, their wives, widows and dependent orphans, or superannuated clergymen, is not a succession of property "for purposes only of public charity." (Morning Star Lodge v. Hayslip 23 Ohio St. 144, approved and followed.)
(Allen, Jones and Matthias, JJ., concur. Marshall, CJ., anl Day, J., dissent. Kinkade, J., not participating.)

PENN. RD. CO. v. RUSYNIK.
Ohio Supreme Court.
No. 20406. Decided Dec. 21, 1927.
Error to Summit Appeals.
Appeals reversed.
Common Pleas affirmed.

991. RAILROADS—820. Negligence.

1. Duty of traveler on public highway approaching intersecting steam railway with intention to cross over it, is, before going onto it, to look both ways and listen, in such manner as will be effective.

2. When view in either direction is temporarily obscured, such person to defer his crossing until such obstruction has passed away and view is clear.

3. Duty of the railway company to signal its approach to a highway grade crossing, as required by law, and failure so to do is negligence on part of company, and gives rise to cause of action by traveler for injuries sustained, when not guilty of contributory negligence.

4. Driver of motor car, about to go on double track railroad, who stops and looks in one direction only, when opposite view is obscured, and sees or hears nothing; proceeds at his own risk.

5. Failure to look in direction from which train is approaching, when such looking might have been effective to avoid injury, constitutes contributory negligence as a matter of law, even though the evidence tends to show failure to give signal of such train required by law.

DAY, J.

1. When a traveler upon a public highway approaches a steam railway which intersects at grade the highway, with one or more tracks, with an intention of crossing over, it is the duty of such traveler, before going upon the railway, to look both ways and listen for the approach of trains; and such looking and listening must be at such time and place and in such manner as will be effective to accomplish the ends designed thereby. When the view of such traveler in either direction is temporarily obscured by a passing train, smoke, steam or dust arising therefrom, it is the duty of such traveler to defer his crossing and remain in a place of safety until such obstruction has passed away and a clear view is afforded.

2. It is the duty of the railway company, when its trains are approaching a highway grade crossing, to give all the signals of such approach required by law, in order that travelers upon the highway may be thereby informed of the approach of trains, and a failure to give such signals is negligence upon the part of the company which will give rise to a cause of action in favor of a traveler upon the highway for injuries sustained by a collision with such train proximately caused by such negligence when the traveler is not himself guilty of negligence that directly and proximately contributed thereto.

3. A person driving a motor car upon a public highway and about to go upon a double track railroad crossing who stops and looks in one direction when his view is obscured by a passing freight train and the smoke therefrom, and looking in the opposite direction sees nothing, relying only for his safety upon not hearing an approaching train coming from an opposite direction to that of the passing freight train, or any signal of such approaching train, and taking no further precaution, proceeds at his own risk. If his failure to look in the direction from which a train is approaching, at a time and place when such looking would have been effective, results in an injury to himself when the same might have been avoided had he so looked, such conduct constitutes contributory negligence as a matter of law that will prevent a recovery, even though the evidence tends to show there was a failure to give the signals required by law of such approaching train.

(Marshall, CJ., Kinkade, Jones and Matthias, JJ., concur.)